IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHURON PORTER,  )
 ) Civil Action No. 17 – 25
    Petitioner, )
 ) Judge Arthur J. Schwab
 v. ) Magistrate Judge Lisa Pup Lenihan
 )
DISTRICT ATTORNEY )
ALLEGHENY COUNTY, THOMAS )
F. MERRICK and THE ATTORNEY )
GENERAL OF THE STATE OF )
PENNSYLVANIA, )
 )
    Respondents. )

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss the Petition for Writ of Habeas Corpus (ECF No. 9) be granted and that the Petition for Writ of Habeas Corpus (ECF No. 4) be dismissed as untimely. It is further recommended that a Certificate of Appealability be denied.

### II. REPORT

#### A. Procedural Background

Petitioner Shurom Porter ("Petitioner") has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, seeking relief from his October 15, 2001 judgment of sentence of twenty-one (21) to fifty (50) years for two counts each of Aggravated Assault, Recklessly

Endangering Another Person, and Firearms Not to Be Carried Without a License. The relevant procedural background of Petitioner's underlying criminal case is as follows.

Petitioner was charged by Criminal Information filed in the Court of Common Pleas of Allegheny County, Criminal Division, CP-02-CR-1703-1999, with two counts each of Criminal Attempt (Criminal Homicide), Aggravated Assault, Recklessly Endangering Another Person, and Firearms Not to Be Carried Without a License. Trial commenced on January 11, 2000, and a verdict finding Petitioner guilty as charged was returned on January 13, 2000. Sentencing took place on March 8, 2000 and Petitioner was sentenced to an aggregate term of imprisonment of not less than twenty-one (21) years nor more than fifty (50) years. (Resp't Exs. 1 & 2; ECF No. 12-1, pp.1-32)

Petitioner, through counsel, filed Post-Sentence Motions that were denied on March 28, 2000. (Resp't Exs. 3 & 4; ECF No. 12-1, pp.33-44, ECF No.12-2, p.1) A notice of appeal was filed on April 26, 2000, and the opinion of the trial court was issued on September 14, 2000. (Resp't Exs. 5 & 9; ECF No. 12-2, pp.2-17, pp.30-39) The Pennsylvania Superior Court affirmed in part and reversed in part on July 12, 2001. The judgment of sentence was vacated and the case was remanded for retrial on the two charges of attempted murder. The remaining convictions were affirmed. (Resp't Ex. 13; ECF No. 12-4, pp.29-38.)

On September 19, 2001, Petitioner filed a *pro se* Motion to Dismiss Attempted Murder Charges for Violation of Double Jeopardy Rights. (Resp't Ex. 14; ECF No. 12-5, pp. 1-2). At resentencing on October 15, 2001, the Assistant District Attorney withdrew the two Criminal Attempt charges that had been remanded for a new trial and Petitioner was sentenced on the remaining counts. Petitioner was again sentenced to an aggregated term of imprisonment of not less than twenty-one (21) years nor more than fifty (50) years. (TT, 10/15/01.)

On October 23, 2001, Petitioner filed a *pro se* Motion to Reopen Post-Verdict Motions for New Trial Nunc Pro Tunc. (Resp't Ex. 15; ECF No. 12-5, pp. 3-8.) On October 25, 2001, Post-Sentence Motions were filed through counsel. (Resp't Ex. 16; ECF No. 12-5, pp. 9-17.) Post-Sentence Motions were denied by the trial court on October 31, 2001. (Resp't Ex. 17; ECF No. 12-5, p. 17.)

On November 6, 2001, Petitioner filed a *pro se* Notice of Appeal. (Resp't Ex. 18; ECF No. 12-5, pp. 18-21.) On November 29, 2001, Petitioner, through counsel, filed an Amended Notice of Appeal. (Resp't Ex. 19; ECF No. 12-5, pp. 22-35.) On March 2, 2002, the trial court filed its opinion. (Resp't Ex. 22; ECF No. 12-6, pp. 1-6.) On March 28, 2002, Petitioner filed a *pro se* Motion for New Effective Assistance of Counsel Due to Irreconcilable Difference. (Resp't Ex. 23; ECF No. 12-6, pp. 7-9.) On November 8, 2002, the Superior Court affirmed the judgment of the trial court. (Resp't Ex. 28; ECF No. 10-6, pp. 1-14.) On December 9, 2002, a Petition for Allowance of Appeal ("PAA") to the Pennsylvania Supreme Court was filed by counsel. (Resp't Ex. 30; ECF Nos. 10-7, 10-8 .) The PAA was denied on September 3, 2003. (Resp't Ex. 32; ECF No. 10-9, p. 2.)

On June 8, 2004, Petitioner filed a *pro s*e Motion for Post Conviction Collateral Relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). (Resp't Ex. 33; ECF No. 10-9, pp.3-12). Counsel, who was appointed to represent Petitioner, filed a Motion to Withdraw as PCRA Counsel and a Turner/Finley No-Merit Letter on September 6, 2005. (Resp't Ex. 34, ECF No. 10-9, pp.13-21.) On October 18, 2005, the court granted the Motion to Withdraw and gave notice of an intention to dismiss the PCRA petition without a hearing. (Resp't Ex. 35, ECF No. 10-9, p.22.) On December 21, 2005, Petitioner filed a *pro se* response to the court's notice of

intent to dismiss. (Resp't Ex. 36, ECF No. 10-9, pp.23-26.) On January 10, 2006, the court dismissed the PCRA petition. (Resp't Ex. 37; ECF No. 10-9, p.27.)

On February 5, 2006, Petitioner filed a *pro se* Notice of Appeal. (Resp't Ex. 38; ECF No. 10-9, pp.28-34.) On May 5, 2006, the trial court filed its opinion for purposes of the appeal and in support of the January 10, 2006 dismissal. (Resp't Ex. 40; ECF No. 10-9, pp.35-36.) The Superior Court affirmed the dismissal of the PCRA petition on July 11, 2007. (Resp't Ex. 48; ECF No. 11-4, pp.8-16.) No Petition for Allowance of Appeal was filed in the Pennsylvania Supreme Court.

On February 28, 2008, Petitioner filed a second *pro se* Motion for Post-Conviction Collateral Relief pursuant to the PCRA. (Resp't Ex. 49; ECF No. 11-4, pp.17-29.) The court dismissed the PCRA petition at time barred on April 29, 2008. (Resp't Ex. 54; ECF No. 11-5, p. 40.) Petitioner filed a Notice of Appeal on May 8, 2008, and the trial court filed its opinion on September 15, 2008. (Resp't Exs. 55 & 57; ECF No. 11-5, pp. 41-42, ECF No. 11-6, pp.1-2.) On June 16, 2009, the Superior Court dismissed the appeal for Petitioner's failure to file an appellate brief. (Resp't Ex. 59; ECF No. 11-6, p.6.)

On February 11, 2015, Petitioner filed a third *pro se* Motion for Post-Conviction Collateral Relief pursuant to the PCRA. (Resp't Ex. 60; ECF No. 11-6, pp.7-27.) The petition was dismissed as patently frivolous on April 20, 2015. (Resp't Ex. 63; ECF No. 11-6, p.36.) Petitioner appealed and the court filed its opinion on June 7, 2016. (Resp't Ex. 73; ECF No. 11-7, pp.31-33.) The Superior Court affirmed dismissal of the petition on November 7, 2016. (Resp't Ex. 77; ECF No. 11-10, pp.1-11.)

The Petition for Habeas Corpus was filed pursuant to the mailbox rule on January 3, 2017.[1] (ECF No. 1.) In his Petition for Writ of Habeas Corpus, Petitioner makes four claims: (1) Actual innocence; (2) Ineffective assistance of counsel for failing to conduct an investigation into Petitioner's alibi defense and alibi witnesses; (3) Ineffective assistance of counsel for failure to hire a forensic expert; and (4) Illegal and unconstitutional sentence. (ECF Nos. 4 & 5.) On March 21, 2017, Respondents filed a Motion to Dismiss the Petition for Writ of Habeas Corpus arguing that it was untimely filed. (ECF No. 9.) Petitioner filed a response to the Motion to Dismiss on April 25, 2017. (ECF No. 14.)

B. **Discussion**

The Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, 110 Stat. 1214, imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and it provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[1] Under the mailbox rule, a pro se prisoner's filing is deemed filed at the time he or she hands it over to prison officials for forwarding to the court or puts it in the prison mailbox. Houston v. Lack, 487 U.S. 266, 276 (1988). Furthermore, the fact that this case was initially closed for Petitioner's failure to pay the filing fee or submit a motion for leave to proceed *in forma pauperis* is of no importance for statute of limitations purposes because Petitioner paid the filing fee within a reasonable amount of time thereafter. *See* Harris v. Vaughn, 129 F. App'x 684, 690 (3d Cir. 2005); *see also* Rule 3 of the Rules Governing Habeas Corpus Cases Under Section 2254 (advisory committee notes).

> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
> 
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005). In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

As to the first inquiry, the vast majority of habeas cases fall within § 2244(d)(1)(A), with AEDPA's limitation period commencing for all claims on the date the state prisoner's judgment of sentence became final by the conclusion of direct review. Such is the case here.[2]

---

[2] Petitioner does not assert that there was an impediment to filing his habeas petition which was caused by state action, that his petition involves a right which was newly recognized by the United States Supreme Court, or that there are new facts which could not have been previously discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

In this case, Petitioner was sentenced on October 15, 2001 after his case was remanded on appeal. Petitioner appealed and then filed a PAA after his judgment of sentence was affirmed by the Superior Court. His PAA was denied by the Pennsylvania Supreme Court on September 3, 2003. Petitioner then had 90 days to file a petition for writ of certiorari in the United States Supreme Court, which he did not do. Consequently, his judgment of sentence became final on December 2, 2003, the date of the expiration of the 90 day period for filing a petition for writ of certiorari. *See* [Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir.2000)](#) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review, including the time limit (90 days) for filing a writ of certiorari in the Supreme Court).

Petitioner's one-year limitations period to file for federal habeas relief began to run the next day, and absent tolling of the limitation period, Petitioner had until December 2, 2004 to file a petition for writ of habeas corpus.

As to the second inquiry, the one-year limitations period was tolled during the pendency of Petitioner's "properly filed" state post-conviction proceedings pursuant to section 2244(d)(2). Because Petitioner sought collateral relief, statutory tolling applies.

Petitioner filed his first PCRA petition on June 8, 2004, at which point 188 days had elapsed since Petitioner's judgment of sentence became final. The statute of limitations was tolled until August 10, 2007, which was the last day Petitioner had to file a PAA with the Pennsylvania Supreme Court after the Superior Court affirmed the dismissal of his PCRA petition on July 11, 2007. The statute of limitations started to run again the next day and ran until it expired 177 days later, on February 3, 2008 (365-188=177). Petitioner, however, did not

---

Therefore, the "trigger date" for all of his claims is the date his judgment of sentence became final.

file his Petition for Writ of Habeas Corpus until January 3, 2017, approximately nine years later. Clearly, the Petition was untimely filed.[3]

Having failed to meet AEDPA's one-year statute of limitations, Petitioner's Petition for Writ of Habeas Corpus can only be saved by application of the doctrine of equitable tolling. The United States Supreme Court has held that AEDPA's statute-of-limitations period "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he shows that: (1) he has been pursuing his rights diligently,[4] and (2) some extraordinary circumstance stood in his way and prevented timely filing. Id. at 649. See also Ross, 712 F.3d at 798-804; United States v. Thomas, 713 F.3d 165, 174 (3d Cir. 2013); Munchinski v. Wilson, 694 F.3d 308, 329-32 (3d Cir. 2012). "This conjunctive standard requires showing *both* elements before we will permit tolling." Sistrunk v.

---

[3] While Petitioner did file a second PCRA petition in state court, it was not filed until February 28, 2008, after the one-year statute of limitations to file his federal habeas corpus petition had already expired. Moreover, Petitioner's second and subsequently filed PCRA petitions would not have tolled the statute of limitations because they were not "properly filed" state post-conviction proceedings. *See also* Merritt v. Blaine, 326 F.3d 157, 165 (3d Cir. 2003) (holding that untimely PCRA petition does not toll the federal limitations period even where the petitioner sought to pursue his PCRA petition under a statutory exception to the PCRA's time bar).

[4] The United States Court of Appeals for the Third Circuit has explained:

> The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence. Holland, 130 S.Ct. at 2565…. A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case. *See* Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require the maximum feasible diligence, but it does require diligence *in the circumstances*.") (emphasis added) (internal quotation marks and citation omitted); *see also* Doe v. Busby, 661 F.3d 1001, 1013 (9th Cir. 2011) ("To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution *in light of his or her particular circumstances*." (emphasis added)).

Ross v. Varano, 712 F.3d 784, 799 (3d Cir. 2013).

Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (emphasis in original).  The Third Circuit has advised that:

> "[t]here are no bright lines in determining whether equitable tolling is warranted in a given case." Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011). Nevertheless, "courts must be sparing in their use of equitable tolling," Seitzinger v. Reading Hosp. & Medical Ctr., 165 F.3d 236, 239 (3d Cir. 1999), and should do so "only when the principles of equity would make the right application of a limitation period unfair." Miller [v. New Jersey State Dept. of Corr.], 145 F.3d [616, 618 (3d Cir. 1998)].

Sistrunk, 674 F.3d at 190.

Petitioner appears to acknowledge that his Petition for Writ of Habeas Corpus was filed outside of the statute of limitations, but he contends that Respondent "has unlimited resources" and will suffer "no prejudice" if this Court were to review the merits of his claims.  He further asserts that Congress' intent in enacting a statute of limitations for habeas petitions was to prevent those that abuse the system from filing "the same petitions" and "arguing the same issues" and not to stop innocent men and women from pursuing their rights in federal court.  He claims that he is factually innocent of the crimes with which he was convicted and will call alibi witnesses to testify as to his innocence should this Court grant him an evidentiary hearing.  Finally, he asserts that he has "tried [his] best to comply with state rules" but he does not have his sentencing and re-sentencing transcripts "to point out the errors of the sentencing court in imposing the unconstitutional and illegal sentence."  He claims he cannot obtain them because the state court either cannot find them or has lost them.  (ECF No. 4, pp.5, 7, 13.)

First, Petitioner's argument that his petition should be reviewed because by enacting the statute of limitations Congress *only intended* to prevent abusers of the writ is incorrect.  While it is true that Congress intended to "curb the abuse of the writ of habeas corpus" with the enactment of the AEDPA, including "delayed and repetitive [habeas] filings," United States v.

Bendolph, 409 F.3d 155, 163 (3d Cir. 2005) (citing cases), Congress had a "wide spectrum of interests" it "intended to protect through habeas reform," Bendolph, 409 F.3d at 163, including "interests of judicial economy and finality of judgments," Long v. Wilson, 393 F.3d 390, 402 (3d Cir. 2004). In Long, the Third Circuit agreed with the Second Circuit Court of Appeals when considering the importance of the AEDPA's statute of limitations as it relates to finality of convictions. Specifically, it said,

> The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time. Like the other procedural bars to habeas review of state court judgments, the statute of limitation implicates the interests of both the federal and state courts, as well as the interests of society, and therefore it is not inappropriate for the court, on its own motion, to invoke the doctrine.

Long, 393 F.3d at 402 (quoting Acosta v. Artuz, 221 F.2d 117, 123 (2d Cir. 2000) (internal quotations and citations omitted)). The Third Circuit echoed that sentiment in Bendolph when it stated

> Limitations periods "protect defendants *and* the courts . . .," United States v. Kubrick, 444 U.S. 111, 117 (1979) (internal quotation omitted) (emphasis added), because they "free[ ] . . . courts from adjudicating stale claims," Sun Oil Co. v. Wortman, 486 U.S. 717, 736 (1988) (Brennan, J., concurring). They also support "'the minimization of unnecessary litigation,'" Felder v. Casey, 487 U.S. 131, 154 (1988) (White, J., concurring) (internal quotation omitted). These public and judicial interests transcend the parties to a litigation in the same way as the interests furthered by the AEDPA's limitations period. *See* Long, 393 F.3d at 402-04; Robinson, 313 F.3d 134-37; Banks, 271 F.3d at 533 n. 4; Artuz, 221 F.3d at 123.

Bendolph, 409 F.3d at 163. It further concluded that "limitations periods should be construed consonant with the legislative scheme they support[,]" and "Congress plainly intended strict reform of habeas corpus in passing the AEDPA, and the practical problems of attempting to re-litigate matters which are many years old are obvious." Id., n.13 (citing American Pipe & Const.

Co. v. Utah, 414 U.S. 538, 557–58 (1974)). Petitioner's argument relating to Congress' intent in enacting the AEDPA's statute of limitations does not entitle him to any sort of equitable tolling, nor does his argument that Respondent will suffer "no prejudice" if his petition is reviewed.

Second, Petitioner is not entitled to equitable tolling based on his argument that he was unable to obtain the transcripts of his sentencing and re-sentencing hearings. *See*, *e.g.*, U.S. v. Shabazz, 2006 WL 2854301, at *3 (E.D. Pa. Oct. 4, 2006). Petitioner has not identified why he could not timely file, at a minimum, a basic habeas petition, and his situation certainly does not constitute an extraordinary circumstance warranting tolling. *See* Brown v. Shannon, 322 F.3d 768 (3d Cir.), *cert*. *denied*, 539 U.S. 948 (2003), (holding that there were not extraordinary circumstances sufficient to justify equitable tolling despite the fact that the petitioner's attorney was unable to obtain the trial transcript, since these circumstances did not prevent the petitioner from filing "a basic *pro se* habeas petition."). *See also* Woods v. James, 2005 U.S. Dist. LEXIS 41841, at *12 (E.D. Pa. Apr. 24, 2006) (stating "[t]he inability to obtain a trial transcript, standing alone, does not constitute an extraordinary circumstance warranting equitable tolling"); White v. Shannon, 2003 WL 21771723, at *5 (E.D. Pa. July 24, 2003) (stating "it is not required that a petitioner have a complete trial record when filing a state PCRA or a federal habeas claim").

Finally, it appears Petitioner attempts to invoke the "actual innocence" exception to the statute of limitations. In McQuiggin v. Perkins, 133 S .Ct. 1924 (2013), the United States Supreme Court reaffirmed this "equitable exception" but only when the petitioner presents new evidence that "shows it is more likely than not that no reasonable juror would have convicted [him]." Id. at 1933. Thus, under McQuiggin, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this

11

case, expiration of the statute of limitations." Id. at 1928. The Court's opinion in McQuggin makes clear the limitations on its holding: "tenable actual-innocence gateway pleas are rare: [A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

The Court also stressed the "demanding" nature of the test for permitting the gateway to open: "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id. at 1936 (quoting Schlup, 513 U.S. at 316). Additionally, the Court noted that the degree of diligence displayed by the petitioner in pursuing and presenting new evidence "bears on the determination whether the petitioner has made the requisite showing [of actual innocence]." Id. at 1935.

The focus under the "actual innocence" exception is on establishing actual innocence as opposed to legal innocence. See Schlup, 513 U.S. at 327-28. An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. at 324. In this Circuit, evidence is "new" under the Schlup standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence, except in situations where the evidence was not discovered due to the ineffectiveness of counsel. *See* Houck v. Stickman, 625 F.3d 88, 93-94 (3d Cir. 2010).

In support of his actual innocence claim, Petitioner relies on affidavits from the following three individuals: Amanda Shaffer, Debra Purter and Diane Purter.[5] He attached each of their affidavits to his Petition for Writ of Habeas Corpus, and, in full, they read as follows:

> Diane Purter:
>
> I was outside in front of my mother's house and I never seen my nephew out there when that shooten took place. I show some tall light skin male shooting. I was suppose to come testify and that I believe if I would of came in to testify my nephew would have had a better out come on his case.

(ECF No. 4-1.)

> Debra Purter:
>
> On 12/26/98 I heard shots fired outside my residence so I looked to see what was going on, a week prior to this above date my son had been shot at, so I looked to see who it was, my son had been gone for three days saying he was going to some girls house.

(ECF No. 4-2.)

> Amanda Shaffer:
>
> Shuron Purter was with me December 23, 24, 25, 26, year of 1998, I will testify to this in court.

(ECF No. 4-3.)

The problem with at least two of these individuals is that they were known to Petitioner prior to or during his trial in January 2000. Petitioner was specifically aware of Amanda Shaffer's testimony as early as the day that he was arrested because it is his position that he was with her on the day of the crime. Also, although somewhat at odds with her affidavit, Petitioner

---

[5] It is unknown whether Debra Purter and Diane Purter are related to Petitioner as their last names also appear as Porter in a few places in the record. Similarly, Petitioner's last name appears as Purter in a few places in the record. Based on the testimony provided in their affidavits, it appears that Diane Purter is Petitioner's aunt and Debra Purter is possibly his mother.

13

states in his brief in support of his Petition for Writ of Habeas Corpus that "[Diane Purter] did come to court to testify but was not able to." (ECF No. 5, p.4.) Thus, these witnesses are not "new" as Petitioner was clearly aware of the testimony each of them would have provided prior to or during his trial. Additionally, as to Debra Purter, she does not state that she saw or could identify the shooter. As such, her testimony is far from establishing Petitioner's innocence.

In sum, Petitioner has not shown entitlement to any equitable tolling, and therefore, the Petition should be dismissed as untimely.

### C. Certificate of Appealability

A certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right or shown that jurists of reason would disagree that his habeas petition was untimely filed. *See*, *e.g.*, Slack v. McDaniel, 529 U.S. 473 (2000) (explaining standard for grant of a certificate of appealability where court does not address petition on the merits but on some procedural ground); Walker v. Government of the Virgin Islands, 230 F.3d 82, 89-90 (3d Cir. 2000).

### III. CONCLUSION

For the aforementioned reasons, it is respectfully recommended that the Motion to Dismiss the Petition for Writ of Habeas Corpus (ECF No. 9) be granted and that the Petition for Writ of Habeas Corpus (ECF No. 4) be dismissed as untimely. It is further recommended that a Certificate of Appealability be denied.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the

date on which the objections are served to file its response.  A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: May 31, 2017.

_____
Lisa Pupo Lenihan
United States Magistrate Judge


Cc:   Shuron Porter
      EE-8040
      S.C.I. Huntingdon
      1100 Pike Street
      Huntingdon, PA  16654-1112

      Counsel for Respondents
      (*Via CM/ECF electronic mail*)